# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**COLBY DRANOEL LEONARD**                                   **CIVIL ACTION**

**VERSUS**                                                          **NO. 15-73-SDD-EWD**

**KEITH COOLEY, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 29, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**COLBY DRANOEL LEONARD**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 15-73-SDD-EWD**

**KEITH COOLEY, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("habeas petition"), filed by Colby Dranoel Leonard ("Petitioner").[1] It is recommended that the habeas petition be denied, as Petitioner's claims are either procedurally defaulted or fail on the merits. There is no need for oral argument or for an evidentiary hearing.

## I.     PROCEDURAL HISTORY

Petitioner was charged by a Felony Bill of Information in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana with armed robbery.[2] After a jury trial in February 2008, Petitioner was found guilty of armed robbery.[3] He was sentenced on March 27, 2008 to thirty-five years at hard labor without the benefit of probation, parole, or suspension of sentence.[4] Petitioner filed a direct appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"), which affirmed his conviction and sentence on March 27, 2009.[5] The Louisiana Supreme Court denied Petitioner's request for review on January 8, 2010.[6]

Petitioner filed a *pro se* application for post-conviction relief ("PCR application") at the trial court on or about February 10, 2011.[7] On March 26, 2013, the Commissioner recommended

---

[1] R. Doc. 1.
[2] R. Doc. 37-2, p. 63.
[3] R. Doc. 37-2, pp. 60, 132.
[4] R. Doc. 37-2, pp. 61, 139.
[5] *State v. Leonard,* No. 2008-2090 (La.App. 1 Cir. 3/27/09), 2009 WL 838624.
[6] *State v. Leonard*, No. 2009-0908 (La. 1/8/10), 24 So.3d 859 (Mem.).
[7] R. Doc. 37-1, pp. 50-83.

that Petitioner's PCR application be denied and that the claims be dismissed on the merits.[8] On April 8, 2013, Petitioner filed a Motion to Traverse Commissioner's Recommendation.[9] The trial court issued an order on May 1, 2013, dismissing Petitioner's PCR application.[10] Petitioner sought review of the dismissal of his PCR application with the First Circuit on September 12, 2013.[11] The First Circuit denied the writ on February 27, 2014.[12] Petitioner then sought review at the Louisiana Supreme Court on March 17, 2014.[13] The Louisiana Supreme Court also denied review on January 9, 2015.[14]

In February 2015, Petitioner filed his habeas petition with this Court,[15] asserting the following grounds for relief: (1) conviction obtained by the use of evidence gained pursuant to an unconstitutional search and seizure, (2) conviction obtained by the use of evidence obtained pursuant to an unlawful arrest,[16] (3) expired/defective bill of information, (4) conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant favorable evidence in violation of *Brady v. Maryland*,[17] (5) conviction based on insufficient evidence, (6) ineffective assistance of counsel, and (7) improper court procedure.[18] The Court initially dismissed the habeas petition as untimely[19] Petitioner appealed the Court's decision to the United States Fifth Circuit Court of Appeals.[20] Upon clarification from the appeals court about the impact of the First Circuit's dismissal of Petitioner's writ application "on showing made," and his correction of the deficiencies

---

[8] R. Doc. 37-1, pp. 126-135.
[9] R. Doc. 37-1, pp. 136-160.
[10] R. Doc. 37-1, p. 161.
[11] R. Doc. 37-1, p. 169 to R. Doc. 37-2, p. 14.
[12] R. Doc. 37-2, p. 20.
[13] R. Doc. 37-2, pp. 28-45.
[14] R. Doc. 37-2, p. 47.
[15] R. Doc. 1.
[16] This claim appears to be intertwined with Petitioner's claims regarding suggestive identification procedures. R. Doc. 1-2, pp. 14-15. Claims 1 and 2 were in reverse order in Petitioner's PCR application.
[17] 373 U.S. 83 (1963).
[18] R. Doc. 1, pp. 4-7.
[19] R. Docs. 22 & 23.
[20] R. Doc. 24.

at the First Circuit, the habeas application was deemed timely, and the case was remanded to this

Court for further proceedings.[21]

## II.   FACTUAL BACKGROUND

The facts, as summarized by the First Circuit, are as follows:

> The victim, J.N.,[22] testified at trial. On January 10, 2007, she was a student at
> Louisiana State University and resided at an apartment complex on Highland Road.
> Shortly after 2:00 a.m., as she was returning home after attending a birthday party,
> [Petitioner] approached her in the parking garage of the apartments. He had a gun
> in one hand and put his finger on his mouth to indicate she was to stay silent. He
> told the victim that she had better not run or scream and asked her how much money
> she had. The victim told [Petitioner] that she did not have much money and pleaded
> with him to let her go. She stated that she would do anything and that her friends
> would be looking for her, although she knew they had already left. [Petitioner]
> asked the victim if she knew how to "deep throat," and placed his hand as if he was
> about to unbutton his pants. The victim told [Petitioner] that her friends were
> coming and that a sound in the garage might be them. [Petitioner] told the victim
> to give him all the money she had in her purse, and she gave him three one dollar
> bills and some change.
>
> After taking the victim's money, [Petitioner] pulled her into a corner near the
> elevator. A small dog came up the stairway, and the victim screamed because she
> was afraid of dogs. Another resident of the apartment complex then exited the
> elevator. [Petitioner] told the victim that she had better act like they were together
> and kissed her on the cheek. The resident exiting the elevator asked the victim if
> she was okay and she nodded her head, but whispered "help me," and "[c]all 911."
> [Petitioner] told the other resident that everything was okay and that he should "go
> on about [his] business." [Petitioner] told the victim to go into the stairway, but she
> broke away and got into a car that was driving by in the parking garage. She then
> contacted the police. Approximately ten minutes later, she identified [Petitioner] as
> the robber after the police brought him to her to view. At trial, she identified
> [Petitioner] in court as the robber and State Exhibit # 2 as the gun used during the
> robbery.
>
> Baton Rouge City Police Officer Michael Thomas also testified at trial. On January
> 10, 2007, he responded to the scene of the crime after being alerted to a robbery in
> progress. The suspect was described as a black male, wearing all black clothing and
> a black knit cap. As Officer Thomas approached the parking garage he saw an
> individual hanging from the second floor of the garage and who then dropped down
> fifteen to twenty feet into an alley next to the garage. Officer Thomas went to the
> alley and saw a black male, who was wearing black pants, a black shirt, and a black

---

[21] R. Doc. 31.
[22] The First Circuit referenced the victim only by initials.

knit hat, turn and look at him, and then begin running away. Officer Thomas requested assistance and chased the suspect as he jumped over two fences. Officer Thomas subsequently located the suspect lying across the passenger seat of a car on top of a gun. Another man, wearing a blue work uniform, was also in the car. A second weapon, an automatic-style firearm, was also recovered from the area in the car where the defendant's feet would have been. Both weapons were loaded. The defendant had three one dollar bills and change in his pocket. Officer Thomas identified [Petitioner] in court as the suspect he had apprehended and State Exhibit # 2 as the gun that was under the defendant.[23]

## III.    PROCEDURAL OBJECTIONS

Respondent contends that Petitioner's claims 1, 2, 3, 5, and 7 are unexhausted. Specifically, Respondent argues that claims 1, 2, 3, and 5 were dismissed on procedural grounds, *i.e.*, the application of Louisiana Code of Criminal Procedure article 930.4,[24] and that Petitioner failed to indicate the federal bases for claims 3 and 7, such that these claims are based only on state law and not subject to federal review.[25]

The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.[26] In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts."[27] Each claim must be presented to the state's highest court, even when review by that court is discretionary.[28]

"'If a state court clearly and expressly bases its dismissal of a petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for

---

[23] *State v. Leonard*, 2008-2090 (La. App. 1 Cir. 3/27/09), 2009 WL 838624, at *1.

[24] R. Doc. 12, pp. 15-17.

[25] R. Doc. 12, pp. 17-19.

[26] *Bufalino v. Reno*, 613 F.2d 568, 570 (5th Cir. 1980).

[27] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

[28] *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987).

dismissal, the prisoner has procedurally defaulted his federal habeas claim.'"[29] "The state procedural rule must be 'both independent of the merits of the federal claim and an adequate basis for the court's decision.'"[30] "A state procedural rule is an adequate basis for the court's decision only if it is 'strictly or regularly followed and evenhandedly applied to the majority of similar claims.'"[31]

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[32] Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.[33]

With respect to Respondent's argument that claims 1, 2, 3, and 5 were dismissed pursuant to Louisiana Code of Civil Procedure article 930.4, there is no evidence to support this argument in the record. Rather, the Commissioner's Report evaluating Petitioner's PCR application does not mention article 930.4 at all.[34] The Commissioner did not dismiss any of Petitioner's claims on procedural grounds. Petitioner raised, and the state trial court addressed on the merits, claims 1, 2, 3, 4, 5, and 6 asserted in the habeas petition regarding the arrest,[35] the search and seizure, the defective bill of information, *Brady v. Maryland*, insufficient evidence, and ineffective assistance

---

[29] *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010), quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), cert. denied, 523 U.S. 1139 (1998).

[30] *Id.*, citing *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).

[31] *Id.* (citation omitted).

[32] *Rocha*, 626 F.3d at 822-23.

[33] *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

[34] *See* R. Doc. 37-1, pp. 126-135.

[35] Petitioner intertwines his claim regarding unlawful arrest with one regarding suggestive identification procedures. The Commissioner analyzed this claim as one regarding reliability of identification. R. Doc. 37-1, p. 132.

of counsel.[36]  Further, though these claims, other than the *Brady* claims, were discussed in relation to Petitioner's ineffective assistance of counsel argument, each claim was also addressed on the merits in the Commissioner's Report.  The only claim not addressed by the Commissioner was claim 7 regarding the victim being allowed to refresh her memory at trial, but this claim was raised by Petitioner in his PCR application exactly as it is raised here and was, therefore, fairly presented to the state court.[37]  The only claims not exhausted are Petitioner's claims that he was denied the right to a speedy trial under the Sixth Amendment, which is now being argued in connection with Petitioner's previous claim regarding the expiration of the bill of information, and Petitioner's claim for violation of Due Process, now argued in connection with claim 7 regarding allowing the victim to refresh her memory at trial.  Petitioner did not present these claims as based on federal law grounds in his PCR application as they are presented here.[38]

The only reference to federal law in the state PCR application appears to have been to demonstrate how similar federal laws regarding procedure and evidence are interpreted to aid the state court in determining whether a violation of state law existed by providing analogous scenarios.[39]  The claims were not presented as alleging violations of federal law.  With respect to the speedy trial claim, the Commissioner specifically noted "Petitioner does not claim that his right to a speedy trial was violated."[40]  As noted above, the Commissioner did not address claim 7 regarding the victim being allowed to refresh her memory at trial, but, as the claim was presented in Petitioner's PCR application, it did not have a basis in federal law.[41]  Part of claim 3 related to

---

[36] Petitioner also presented these claims in the same manner in the First Circuit and the Louisiana Supreme Court, so as to fully exhaust the claims.  R. Doc. 37-1, p. 186; R. Doc. 37-2, p. 23.
[37] R. Doc. 37-1, p. 66.
[38] R. Doc. 37-1, pp. 76 & 81.
[39] It also appears Petitioner may have been under the mistaken impression that the Federal Rules of Evidence and Federal Rules of Criminal Procedure had some bearing on state proceedings.
[40] R. Doc. 37-1, p. 133.
[41] *See* R. Doc. 37-1, p. 66.

a violation of Petitioner's right to a speedy trial under the Sixth Amendment, and claim 7, are now procedurally defaulted as the time limit under Louisiana Code of Criminal Procedure article 930.8 to bring those claims in the state court has expired, and those claims would be subject to dismissal pursuant to Louisiana Code of Criminal Procedure article 930.4, as a repetitive application.[42] Accordingly, Petitioner's claims regarding the violation of the right to a speedy trial under the Sixth Amendment and for violation of due process due to the trial court allowing the victim's memory to be refreshed on the stand are subject to dismissal with prejudice.[43]

Relative to other procedural issues, Respondent correctly argues that the rest of claim 3, regarding the expired bill of information, and claim 7, regarding the trial court's decision to allow the victim to refresh her memory, also involve questions purely of state law, which are not subject to federal habeas review.[44] "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[45] A federal court may not grant habeas relief based on an alleged error in the interpretation or application of state law.[46]

As noted above, Petitioner stated claim 3 regarding the expired bill of information solely in terms of "Louisiana law,"[47] and his arguments revolve around Louisiana Code of Criminal

---

[42] Articles 930.8 and 930.4 have both been recognized as independent and adequate state rules that are regularly applied by the state courts. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (Article 930.8); *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4-5 (5th Cir. 2001) (Article 930.4(E)).

[43] Petitioner does not argue that these claims should be allowed to proceed as meeting the requirements of cause and prejudice or because failure to consider the claims would result in a fundamental miscarriage of justice. Cause and prejudice are not evident from the record, and a fundamental miscarriage of justice will not occur should these claims not be considered because Petitioner has presented no evidence to suggest that he is actually innocent.

[44] R. Doc. 12, pp. 18-19.

[45] 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

[46] *Estelle*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] super state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law).

[47] R. Doc. 37-1, p. 64. Petitioner also states "Leonard was dismissed from one judge and prosecutors brought the case to another which at some point with proof falls under double jeopardy." R. Doc. 37-1. p. 64. Though this may have

Procedure articles.[48]    Though Petitioner mentions some federal cases, these are cited to demonstrate that *under Louisiana law*, a jurisdictional defect existed with the proceeding as a result of the expired bill; these cases were not provided to demonstrate a violation of federal law but rather, to provide analogous scenarios occurring in federal courts, though that reliance would be misplaced.    Similarly, regarding claim 7, Petitioner relied solely on the Louisiana Code of Evidence and the Louisiana Constitution.[49]    Accordingly, any error regarding these claims is not subject to review by this federal court.[50]

## IV.    SUBSTANTIVE CLAIMS

### A.    Applicable Legal Standards

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[51]    Relief is authorized if a state court arrived at

---

arguably been a claim under federal law, Petitioner has not pointed to any evidence in the record, and the record does not contain any information to support, the potential for a double jeopardy claim.

[48] R. Doc. 37-1, p. 76.

[49] R. Doc. 37-1, pp. 81-82.    Petitioner did mention Federal Rule of Evidence 103, apparently for comparison.

[50] Even if Petitioner's application could be read as having raised issues of federal law with respect to these claims—his claims still fail.    Failing to charge Petitioner within the time allowed under Louisiana law did not violate his right to a speedy trial in this case.    *See Mosby v. Cain*, No. 11-41, 2012 WL 6651920, at *6 (M.D. La. Nov. 26, 2012) (at least a one-year delay is required to trigger a speedy trial analysis, and delays of less than five years are not enough, by duration alone, to presume prejudice. Here, Petitioner was arrested on January 10, 2007, and trial commenced on February 25, 2008, a little over one year later. R. Doc. 37-2, p. 55.    The delay was not presumptively prejudicial, and it appears the matter was continued on the docket numerous times at the urging of the defense (*see, e.g.*, R. Doc. 37-2, p. 53-55).    Further, it does not appear that Petitioner asserted his right to a speedy trial in state court, so there is no support for a speedy trial claim.    Finally, what Petitioner classifies as allowing the victim to refresh her memory was actually his attorney attempting to cast doubt on her credibility, as explained below. *See* fn 110.

[51] Each claim discussed in this Report was decided by *a* state court on the merits. Because there is a decision on the merits by a state court, deference to that decision generally applies under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").    The deferential standards of review apply to claims adjudicated on the merits by the state

a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on materially indistinguishable facts.[52]

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[53]  Mere error by the state court or this Court's mere disagreement with the state court determination is not enough; the standard is one of objective reasonableness.[54] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[55]  The last reasoned state court opinion regarding Petitioner's claims is the decision from the state trial court on Petitioner's PCR application, so the Commissioner's recommendation is the relevant reasoned opinion for AEDPA deference.[56]

**B. Claim 1: Admission of Evidence Gained Pursuant to an Unconstitutional Search and Seizure**

Petitioner contends that officers lacked probable cause to stop him and ask for his identification, and rather improperly targeted him because he is a black male, in violation of the Fourth and Fourteenth Amendments.[57]  According to Petitioner, this resulted in officers illegally seizing items used at trial, including a gun. *Stone v. Powell*[58] prevents this Court from reviewing

---

courts—the statute does not distinguish between claims fully exhausted and claims simply "adjudicated on the merits in State court." 28 U.S.C. § 2254(d).  *See Bedoya v. Tanner*, No. 12-1816, 2019 WL 1245655 at *10-11 (E.D. La. Feb. 20, 2019) (discussing AEDPA's standards of review even though some claims were only exhausted at the state trial court level).

[52] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[53] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

[54] *Id.  See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

[55] 28 U.S.C. § 2254(e)(1).

[56] *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion…a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

[57] R. Doc. 1-2, pp. 12-14.

[58] 428 U.S. 465 (1976).

Petitioner's Fourth Amendment claim.  In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."[59]  The United States Fifth Circuit Court of Appeals has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."[60]  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."[61]  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*."[62]  Absent allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of Fourth Amendment claims, the *Stone* bar applies.[63]

Here, Petitioner has not alleged that the Louisiana state processes to litigate Fourth Amendment claims are inadequate; rather, he has only voiced discontent with the unfavorable result.  Further, he has not alleged or proven that he had no meaningful opportunity for review of his Fourth Amendment claim in the state courts or that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  Additionally, at

---

[59] *Id.* at 494 (footnotes omitted).
[60] *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).
[61] *Caver,* 577 F.2d at 1192; *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012), citing *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006).
[62] *Register*, 681 F.3d at 628, quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) (internal quotation marks omitted).
[63] *Williams*, 609 F.2d at 220; *Janecka*, 301 F.3d at 321.

least one other district court in Louisiana has found it beyond question "that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."[64]   Because review of the Fourth Amendment claim is barred by the *Stone* doctrine, Petitioner's claim 1 must be dismissed.

### C.  Claim 2: Unlawful Arrest Due to Suggestive Identification Procedures

Petitioner next argues that he was singled out for identification and the identification was suggestive because the victim viewed him in handcuffs.[65]   "Whether identification testimony is constitutionally admissible is a mixed question of fact and law and is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d),"[66] but "the factual findings underlying the determination of the admissibility of identification testimony are entitled to that presumption."[67] Two questions must be answered affirmatively for identification procedures to be deemed unconstitutional: 1) was the identification procedure unconstitutionally suggestive, and 2) whether there was a substantial likelihood of misidentification.[68]   If the first question is answered in the negative, the inquiry ends.[69]

That is known as the *Brathwaite* test, as set forth in the U.S. Supreme Court case of *Manson v. Brathwaite*.[70]   The state trial court properly explained that, in accordance with the Supreme Court's ruling in *Brathwaite*, the following factors are to be considered in determining, from the totality of the circumstances, whether a suggestive pretrial identification presents a substantial likelihood of misidentification: (1) the witness's opportunity to view the criminal at the time of

---

[64] *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).
[65] R. Doc. 1-2, p. 15.
[66] *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991), citing *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988); *see also Jordan v. Epps*, No. 09-544, 2012 WL 5997024, at *4 (S.D. Miss. Nov. 30, 2012).
[67] *Peters*, 942 F.2d at 939, citing *Lavernia*, 845 F.2d at 500.
[68] *Id.*
[69] *Id.,* citing *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990), *cert. den'd*, 498 U.S. 828 (1990).
[70] 432 U.S. 98 (1977).

the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.[71]  The trial court then applied those factors to the identification at issue, stating as follows:

> In applying these factors, J.N. was with her assailant for a good amount of time in close proximity in a well-lit parking garage.  J.N. described her assailant as having dark brown skin, kind of skinny, not very built and about her height which was five' seven" tall.  At the time of the arrest, Petitioner stood 5'11" and weighted [sic] 155 lbs.  J.N. explained the height discrepancy by stating that she was wearing heels and actually stood several inches higher than usual.  J.N. recalled that her assailant had on a black knit cap, a black shirt with glitter and black pants.  The record reflects that J.N. was adamant that Petitioner was the man who held her against her will in the garage and robbed her.  J.N. identified Petitioner as her assailant was given immediately after Petitioner's apprehension which was about 15 minutes after the incident occurred.  The Manson factors have clearly been met.[72]

The state court's failure to answer the question regarding suggestiveness is a nonissue because, in answering the query on misidentification, the state court properly applied federal law and did not make an unreasonable determination of the facts in deciding that the victim's identification of Petitioner was reliable, such that there was no substantial likelihood of misidentification.  As one of the two questions that must be answered affirmatively was answered in the negative, resulting in admissibility of the identification, the state court decision was not contrary to or an unreasonable application of federal law.[73]  Therefore, Petitioner's claim 2 also fails on the merits.

### D.  Claim 4: *Brady v. Maryland*

Next, Petitioner argues that his due process rights were violated because the prosecution failed to disclose a statement made by the victim in violation of *Brady v. Maryland*.[74]  "[T]he

---

[71] R. Doc. 37-1, p. 132.

[72] *Id.*

[73] *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (explaining that "an identification found to be reliable will be admitted even though the confrontation procedure was suggestive.").

[74] R. Doc. 1-2, p. 19.

suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[75] To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[76] Evidence is material where there exists a "reasonable probability" that had it been disclosed the result at trial would have been different.[77] "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[78]

Though this claim is purportedly brought pursuant to *Brady*, the *Brady* doctrine is not applicable to this situation because there is no evidence or argument that the alleged evidence was suppressed by the state; at best, it was lost.[79] As noted by the trial court, "[t]he record contains no factual support that J.N. made a written statement to the police…there is no evidence of its existence."[80] Even giving Petitioner the benefit of the doubt and treating this as a lost evidence claim, giving no deference to the Commissioner's analysis of the issue, he cannot prevail. "To be entitled to relief on a claim of lost evidence, the exculpatory value of the evidence must be apparent before the evidence was destroyed. If the exculpatory value of the purportedly destroyed evidence was in question, the failure of law enforcement to preserve the evidence does not violate the Due Process Clause absent a showing of bad faith."[81] Petitioner does not allege that the victim's statement would have been exculpatory, nor does he make any allegations of bad faith on the part

---

[75] *Banks v. Dretke,* 540 U.S. 668, 691 (2004), quoting *Brady,* 373 U.S. at 87.
[76] *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).
[77] *Banks,* 540 U.S. at 699.
[78] *United States v. Bagley,* 473 U.S. 667, 682 (1985).
[79] *Zamora v. Davis*, No. 18-787, 2019 WL 2368682, at *6 (W.D. Tex. June 5, 2019), report and recommendation adopted, No. 18-787, 2019 WL 13318684 (W.D. Tex. Dec. 18, 2019). At worst, the evidence never existed.
[80] R. Doc. 37-1, p. 130.
[81] *Zamora,* 2019 WL 2368682, at *6, citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

of any individual working for the state.[82]   Rather, Petitioner speculates that the statement could have been used to attack the victim's credibility, but he provides no details regarding this argument.[83]   Conclusory and/or speculative allegations are insufficient to establish an entitlement to habeas relief.[84]   Thus, even giving no deference to the state court's decision on the "*Brady*" claim, Petitioner has not alleged sufficient facts to justify relief on this claim, and it is subject to dismissal.

### E.  Claim 5: Insufficiency of the Evidence

In a federal habeas corpus proceeding, the Supreme Court's decision in *Jackson v. Virginia*,[85] provides the standard for testing the sufficiency of the evidence.   The question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[86] Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence offered at the petitioner's state court trial.[87]

State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review.[88]   Petitioner was charged and convicted of armed robbery,[89] which, at the time of the crime, was defined under Louisiana law as "the taking of anything of value

---

[82] R. Doc. 1-2, pp. 19-20.

[83] R. Doc. 1-2, p. 20.

[84] *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (holding speculative or conclusory allegations cannot support a *Brady* claim); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

[85] 443 U.S. 307 (1979).

[86] *Id.* at 319 (emphasis in original), citing *Johnson v. Louisiana*, 406 U.S. [356] at 362 [1972)].

[87] *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989).

[88] *Dickinson v. Cain*, 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).

[89] R. Doc. 37-2, pp. 63, 132.

belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."[90]

The evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Petitioner guilty of armed robbery beyond a reasonable doubt. In finding the evidence was sufficient to convict, the Commissioner noted that at the sentencing hearing, "the trial court articulated how impressed he was with J.N.'s testimony," noting the judge stated he had "yet to see a person that's a victim of a crime testify better than she did. She was…very believable."[91] The Commissioner went on to include that the judge pointed out the overwhelming evidence against the Petitioner, including that he was seen climbing out of the parking garage where the crime occurred, running from police, caught on top of a weapon, and identified by the victim, and concluded that "[t]here was clearly sufficient evidence" to find Petitioner guilty as charged, dismissing the claims as without merit. This analysis and conclusion are not contrary to clearly established federal law, nor are they based on an unreasonable determination of the facts considering the evidence presented.[92] Therefore, Petitioner's claim 5, challenging the sufficiency of the evidence, is without merit and should be dismissed.

### F. Claim 6: Ineffective Assistance of Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must meet the *Strickland* standard by affirmatively showing: (1) that her counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient

---

[90] La. R.S. § 14:64.

[91] R. Doc. 37-1, p. 134.

[92] The victim's testimony is convincing, as noted by the Commissioner. R. Doc. 37-2, pp. 191-201. She described the Petitioner, identified him in the courtroom, and described her interaction with him in detail. *Id.* Further, one of the responding officers witnessed Petitioner drop down from the second story of the parking garage where the incident occurred, chased Petitioner on foot and only lost sight of him for a few minutes while crossing a fence, but there was no one else around. R. Doc. 37-2, pp. 230-232.

performance prejudiced her defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.[93]   The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.[94]

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.[95]   The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.[96]   This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.[97]   Great deference is given to counsel's exercise of professional judgment.[98]

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.[99]   To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.[100] Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[101]  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors

---

[93] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[94] *Id*.
[95] *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).
[96] *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).
[97] *Martin*, 796 F.2d at 817.
[98] *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816.
[99] *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).
[100] *Strickland*, 466 U.S. at 693.
[101] *Martin*, 796 F.2d at 816.

are "sufficient to undermine confidence in the outcome."[102]  A habeas petitioner must "affirmatively prove," not just allege prejudice.[103]  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply together, the review by federal courts is "doubly deferential."[104]

### 1.  Trial Counsel

Petitioner's case proceeded to trial against advice of his counsel, who recommended he accept a plea deal, which would have resulted in a fifteen-year sentence.[105]  Petitioner claims that his trial counsel was ineffective for failing to raise each claim analyzed above.  With respect to claim 1, the Commissioner correctly noted that "the motion to suppress would have been a frivolous action," because "[c]learly, there was probable cause to search and seize the weapon."[106]  Similarly, counsel was not ineffective for failing to object to the victim's identification of him because he cannot demonstrate a likelihood of misidentification, as discussed above; therefore, seeking to suppress the identification would have been frivolous, and counsel is not ineffective for failing to file frivolous motions.[107]  Though this Court is barred from analyzing claim 3 on the substantive merits, Petitioner also argues counsel was ineffective for failing to object to the expired bill of information.  As noted by the Commissioner, although the bill was filed outside the applicable 60-day window:

> Petitioner, however, fails to show how he was prejudiced since the only remedy for a defendant who challenges a late filed bill is to hold a contradictory hearing

---

[102] *Id.* at 816-17.

[103] *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009).

[104] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[105] R. Doc. 37-2. P. 172.

[106] R. Doc. 37-1, p. 133.  The Commissioner noted that Petitioner was found by police crouched down in the passenger seat of an occupied vehicle and a black revolver was recovered under where Petitioner was sitting in the car.  A silver handgun was also recovered from the floor of the vehicle.  *Id.*

[107] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile options or frivolous objections).

> wherein the state must show just cause for its failure to file the bill timely.  The law
> provides that if just cause is not shown the defendant must be released from
> custody.  But, nothing in the law prevents the State from re-arresting and re-billing
> this defendant with the same charges immediately upon his release.[108]

Petitioner cannot demonstrate prejudice from his counsel's failure to object to the late filed bill, considering the foregoing.  Similarly, an objection to the "insufficient evidence" would have been frivolous because, as discussed above, the evidence was not insufficient.  As Petitioner has not shown that any of his substantive claims have merit, the assessment by the Commissioner that trial counsel was not ineffective for failing to pursue the underlying arguments is not contrary to, nor does it involve an unreasonable application of, federal law or an unreasonable fact determination.[109]

It should be noted that Petitioner's counsel was clearly prepared for his cross examination of the victim and used impeachment evidence when the opportunity arose.[110]  He also made relevant objections during trial.[111]  As noted by the Commissioner, there was significant evidence of Petitioner's guilt, and Petitioner has not shown that he was prejudiced by counsel's performance, or that counsel's performance was deficient.[112]

## 2.  Appellate Counsel

Finally, Petitioner argues that appellate counsel was ineffective for not raising "important claims."[113]  The Commissioner's Report and state court decision is neither contrary to, nor an

---

[108] R. Doc. 37-1 pp. 133-134, citing *State v. Varmall*, 559 So.2d 45 (La. 1989).

[109] *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (failure to file meritless motion to suppress is not ineffective assistance of counsel).

[110] R. Doc. 37-2, pp. 203-219.  Petitioner oddly takes issue with his counsel's efforts to impeach the victim. R. Doc. 37-1, p. 66. The portion of the trial record cited by Petitioner demonstrates his counsel was trying to call into question the victim's credibility.  It was a strategic choice to attempt to impeach her, and strategic choices do not demonstrate deficient performance. *Johnson v. Quarterman*, No. 06-2912, 2007 WL 1886277, at *4 (S.D. Tex. June 29, 2007) ("a disagreement with counsel's strategy will not validate a finding of ineffective assistance of counsel.").

[111] *See, e.g.*, R. Doc. 37-2, pp. 229-230.

[112] R. Doc. 37-1, p. 134-135.

[113] R. Doc. 37-1, p. 65.

unreasonable application of federal law. As discussed in this Report, none of Petitioner's claims are meritorious. It necessarily follows appellate counsel's assistance was not deficient, and Petitioner was not prejudiced because his appellate counsel did not raise meritless claims on appeal, as explained by the Commissioner. Thus, this claim is also without merit.

## V.    CERTIFICATE OF APPEALABILITY

Should Petitioner seek to appeal, a certificate of appealability should be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[114]    Although Petitioner has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[115]    A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[116]  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[117]  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[118]  Here, reasonable jurists would not debate the denial of Petitioner's habeas application or the correctness

---

[114] 28 U.S.C. § 2253(c)(1)(A).
[115] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[116] 28 U.S.C. § 2253(c)(2).
[117] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[118] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

of the procedural or substantive rulings. Accordingly, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

    **VI.   RECOMMENDATION**

    **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus by a Prisoner in State Custody, filed by Petitioner Colby Leonard, be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**. Petitioner's claims that he was denied the right to a speedy trial under the Sixth Amendment, and for violation of Due Process regarding allowing the victim to refresh her memory at trial were not presented as based on federal law grounds in the state court and so those claims are not subject to federal habeas review. While Petitioner's remaining claims were exhausted, he has failed to show that the state court's decision denying those claims was contrary to, or involved an unreasonable application of, federal law or involved unreasonable fact determinations, such that he cannot meet the applicable standard for habeas relief.

    **IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

    Signed in Baton Rouge, Louisiana, on August 29, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**